IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
BURLINGTON VICINAGE

---

| | |
|---|---|
| NOELLE CHARBONNEAU.  :<br>1 Wilderness Drive              :<br>Voorhees, NJ 08043            : | Civil Action No.: |
| : | |
| Plaintiff,   : | **JURY TRIAL DEMANDED** |
| : | |
| v.           : | |
| : | |
| 200 Marter Avenue Operations, LLC        :<br>d/b/a PowerBack rehabilitation Moorestown :<br>212 Marter Avenue                         :<br>Moorestown, NJ 08057                      : | |
| : | |
| Defendant.   : | |

---

## COMPLAINT

Plaintiff Noelle Charbonneau ("Plaintiff"), by and through her undersigned counsel, for her Complaint against Defendant, 200 Marter Avenue Operations, LLC d/b/a PowerBack Rehabilitation Moorestown ("Defendant"), alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action to redress violations by Defendant of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.,* and New Jersey Law Against Discrimination ("LAD"), N.J.S.A. § 10:5-1, *et seq.*, by failing to engage in an interactive process of determining a reasonable accommodation for her disabilities; by discharging Plaintiff on account of her disabilities and/or because Defendant regarded her as being disabled within the meaning of the ADA and the LAD; and in retaliation for requesting a reasonable accommodation in connection thereto.

## PARTIES

2. Plaintiff, Noelle Charbonneau, is an adult American citizen who presently maintains a residence at 1 Wilderness Drive, Voorhees, New Jersey, 08043.

3. Upon information and belief, Defendant, 200 Marter Avenue Operations, LLC d/b/a PowerBack Rehabilitation Moorestown is part of the Continuing Care Retirement Communities and Assisted Living Facilities for the Elderly Industry, with a principle place of business located at 212 Marter Ave, Moorestown, NJ 08057.

4. At all times relevant hereto, Defendants acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendants.

## **JURISDICTION AND VENUE**

5. Paragraphs 1 through 5 are hereby incorporated by reference as though the same were more fully set forth at length herein.

6. On or about October 9, 2020, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"), thereby satisfying the requirements of 42 U.S.C. §2000e-5(b) and (e). Plaintiff's Charge was docketed as EEOC Charge No. 530-2021-00165. Plaintiff's Charge was filed within three hundred (300) days of the unlawful employment practice, i.e. discrimination on account of a disabilities and retaliation on the basis of her good-faith complaints in connection thereto.

7. By correspondence dated June 30, 2021, Plaintiff received a Notice of Rights to Sue from the EEOC regarding her Charge of Discrimination, advising her that she had ninety (90) days to file suit against Defendant.

8. Plaintiff filed this matter within the relevant statutory timeline.

9. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

10. This is an action authorized and instituted pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*.

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is an action arising under the laws of the United States.

12. This Court has pendant jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative fact as her federal claims.

13. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as Defendant resides in this district and conducts business therein, and the events giving rise to this action occurred in this district.

## FACTUAL BACKGROUND

14. Paragraphs 1 through 13 are hereby incorporated by reference as though the same were more fully set forth at length herein.

15. On or around January 15, 2016, Plaintiff was hired by Defendant into the position of Bookkeeper.

16. Over the course of her employment with Defendant, Plaintiff received positive reviews of her performance and no justifiable discipline.

17. At all times relevant hereto, Plaintiff was qualified to perform all of the essential functions of her job, with or without accommodations.

18. By way of background, Plaintiff suffered from Asthma and Chronic Obstructive Pulmonary Disease (COPD), disabilities that fall within the meaning of the ADA, in that they substantially impair major life activities over an extended period of time.

19. In or around March 2020, when many states were shutting down due to COVID-19, Plaintiff's physician advised that due to her disabilities, she was very high risk for contracting COVID-19.

20. Accordingly, Plaintiff's physician recommended that Plaintiff remain out of the office for thirty (30) days.

21. Therefore, Plaintiff disclosed her disabilities to Defendant and provided the appropriate medical documentation.

22. In response, Defendant advised Plaintiff to take short term disability.

23. Accordingly, Plaintiff filled out the appropriate paperwork and her short term disability was approved.

24. It should be noted that Defendant advised Plaintiff that she was not eligible for Family and Medical Leave Act (FMLA) leave due to lack of hours.

25. Nonetheless, Plaintiff's leave began on or around March 28, 2020.

26. On or around April 15, 2020, Plaintiff's physician recommended that she continue her leave of absence indefinitely because she was high risk for contracting COVID-19 and the COVID-19 mortality rate was rapidly increasing.

27. However, on or around April 20, 2020, Defendant advised Plaintiff that they could not hold her position open indefinitely.

28. Accordingly, on or around April 21, 2020, Plaintiff provided a second physician's note stating that her absence due to her disabilities only be extended for an additional thirty (30) days.

29. In response, Defendant advised it was unable to provide additional leave.

30. Defendant further advised that failure to return to work the following week would result in her termination.

31. Therefore, on or around April 23, 2020, Plaintiff's attorney at the time, drafted a letter to Defendant requesting confirmation that she was not FMLA eligible and further outlining her disabilities and request for an additional thirty (30) days of leave.

32. Plaintiff's attorney additionally advised that in the event Defendant was unable to accommodate Plaintiff's reasonable request of an additional thirty (30) day leave of absence that in the alternative, if she was requested to return to work that she be provided with personal protective equipment (PPE) and be allowed to remain in her office.

33. In response, Defendant confirmed she was not eligible for FMLA.

34. Furthermore, Defendant again stated it could no longer accommodate her request for an accommodation and that it could not hold her position open indefinitely, but that if she returned to work, she would be provided the appropriate PPE.

35. In response, on April 26, 2020, Plaintiff's attorney restated that she was not requesting an indefinite leave, but an additional thirty (30) days of leave in connection to her disabilities.

36. Then, on or around April 27, 2020, Plaintiff also emailed Defendant to clarify that she was requesting a leave of absence for an additional thirty (30) days.

37. Plaintiff further stated that if her request for an additional thirty (30) days could not be accommodated, that she could return to work if the following measures were put into effect: (1) she remains in her office during her work hours; (2) in her office, her co-workers and her would remain six (6) feet apart; and (3) she will be provided the proper PPE including an N-95 mask.

38. On April 27, 2020, Defendant emailed her attorney alleging Plaintiff refused to speak with Defendant over the phone and requested that everything be documented.

39. Defendant boldly alleged that it had "no obligation to engage in the interactive process via email."

40. For reasons that seem apparent, Plaintiff wanted these discussions to be memorialized out of fear of a termination.

41. Defendant further stated in its email that the request for leave was denied and that she must return to work, but would not be providing the accommodations she requested.

42. The following day Defendant terminated her employment stating it could not accommodate her requests.

43. In light of the foregoing, Plaintiff believes and thus avers Defendants' reason for terminating her employment was pretextual, and that she was actually terminated on the account of her actual and/or perceived disabilities and/or regarding me as disabled, and in retaliation for her requests for a reasonable accommodation in connection thereto, in violation of the ADA and LAD.

44. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

**COUNT I**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101, et seq.**
**DISCRIMINATION AND RETALIATION**

45. Paragraphs 1 through 44 are hereby incorporated by reference as though the same were fully set forth at length herein.

46. At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

47. At all times relevant hereto, Defendant had at least fifteen (15) employees.

48. Plaintiff is a qualified individual with disabilities within the meaning of the ADA.

49. As described above, Plaintiff's conditions are physical impairments that substantially limited Plaintiff in one or more major life activities.

50. Defendant was aware of Plaintiff's disabilities and/or regarded Plaintiff as being disabled.

51. Plaintiff's request for a thirty (30) day leave or in the alternative, she could return to work provided the following measures were put into effect: (1) she remain in her office during her work hours; (2) in her office, her co-workers and her would remain six (6) feet apart; and (3) be provided the proper PPE including an N-95 mask for the above-mentioned conditions constituted a request for a reasonable accommodation.

52. Furthermore, Defendant failed to engage in the interactive process with Plaintiff with respect to Plaintiff's requests for a reasonable accommodation.

53. By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by terminating Plaintiff on account of her disabilities and/or because it regarded her as being disabled within the meaning of the ADA and in retaliation for her requests for a reasonable accommodation in connection thereto, in violation of the ADA.

54. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, earnings potential, raises, and other significant economic benefits, along with emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

D. Pre-judgment interest in an appropriate amount;

E. Such other and further relief as is just and equitable under the circumstances; and

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

**COUNT II**
**THE NEW JERSEY LAW AGAINST DISCRIMINATION**
**N.J.S.A. § 10:5-1, *et seq.***
**DISCRIMINATION AND RETALIATION**

55. Paragraphs 1 through 54 are hereby incorporated by reference as though the same were more fully set forth at length herein.

56. At all times relevant hereto, Plaintiff was an employee within the meaning of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.*

57. Pursuant to the LAD, Plaintiff is a qualified individual with disabilities in that, at all times relevant hereto, she suffered from physical impairments that substantially limited her major life activities.

58. Plaintiff was/is able to perform the essential functions of her job with or without reasonable accommodations.

59. Defendants was aware of Plaintiff's disabilities and/or regarded Plaintiff as being disabled.

60. Defendant failed to engage in the interactive process with Plaintiff with respect to providing Plaintiff with a reasonable accommodation.

61. It is believed and therefore averred that Defendant terminated Plaintiff's employment on the basis of her actual and/or perceived disabilities, because Defendant regarded Plaintiff as being disabled within the meaning of the LAD, and/or in retaliation for Plaintiff's requests for reasonable accommodations in connection with her disabilities.

62. Defendant's conduct was intentional, deliberate, willful, and conducted in disregard to the rights of Plaintiff.

63. As a direct and proximate result of Defendant's illegal discrimination, Plaintiff has suffered and will continue to suffer harm, and is entitled to all legal and equitable remedies available under the LAD.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, loss of fringe benefits, and raises in an amount to be determined at trial;

B. Compensatory, exemplary, and/or punitive damages;

C. Pre-judgment interest in an appropriate amount; and

D. Such other and further relief as is just and equitable under the circumstances;

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: __/s/ Preeya Bansal_____
Michael Murphy, Esquire
Preeya Bansal, Esquire
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267.273.1054
murphy@phillyemploymentlawyer.com
pbansal@phillyemploymentlawyer.com
Attorney for Plaintiff

Dated: August 24, 2021

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.